Frank CARTER, Plaintiff,

v.

Warren INGALLS, Defendant.

Frank CARTER, Plaintiff,

v.

John WELDON, Defendant.

Frank CARTER, Plaintiff,

v.

Allen BAKER, Defendant.

Civ. A. Nos. 483–267, 483–433
and 483–434.

United States District Court,
S.D. Georgia,
Savannah Division.

Oct. 6, 1983.

Frank Carter, pro se.

Fain, Gorby, Reeves & Moraitakis, Donald M. Fain, William P. Tinkler, Jr., Atlanta, Ga., for defendants.

## ORDER

BOWEN, District Judge.

The study of prisons and the *pro se* litigants who inhabit them is like the study of astronomy or even science fiction. The explorer of the world of prisons and *pro se* plaintiffs embarks upon a fantastic voyage into another world, even another galaxy, far, far away. Prisoners protect themselves with the laser-light power of their constitutional rights. Prison officials shield themselves with administrative autonomy. Both sides have power, but both must exercise restraint, lest they give in to the dark side of the force.

The astronomer who examines the sky will discover a variety of celestial bodies. The explorer of the *pro se* world will encounter in his twilight zone a variety of phenomena, although few prisoner plaintiffs are noted for their heavenly aura.[1] A handful of cases burn brightly with a meritorious claim, piercing the prison officials' shield of autonomy. Many inmate cases, however, explode instantaneously in a burst of maliciousness or frivolousness or because of a failure to state a claim. Other cases glow on and on, dimming gradually as discovery and evidentiary hearings make clear that they have no merit.

Some *pro se* prisoner plaintiffs, like stars in a constellation, cluster in groups and file suit collectively. Others, acting individually, petition the Court or write the clerk of the court with each rotation of the earth around the sun. Some *pro se* plaintiffs are comets, appearing only periodically, but doing so with a great flash of reserved energy and leaving numerous cases and defendants in their wakes. Still other *pro se* plaintiffs are meteors who in a sudden flash briefly enter the world of *pro se* litigation and then are gone.[2]

Thus far, Frank Carter, plaintiff in the cases presently before the Court, has proven to be a meteor among *pro se* prisoner plaintiffs. He wrote frequently to the Court and the clerk of the court for a few weeks, but now nothing emanates from his pen. Carter, an inmate at Georgia State Prison in Reidsville, Georgia seeks to file *in forma pauperis* two civil rights complaints pursuant to 42 U.S.C. § 1983. Carter apparently is indigent; leave to proceed without prepayment of costs is granted. 28 U.S.C. § 1915(a).

Carter presently has one case pending before this Court. *Carter v. Ingalls*, No. CV483–267 (S.D.Ga. filed July 5, 1983). In the pending case, Carter has named Warren Ingalls, hospital administrator at Georgia State Prison, as defendant. Carter alleges that he is receiving improper medication for his ailments. He claims to have "blue ink and glass in the General sensory area" of his brain, as well as amnesia and failing eyesight. Carter alleges that Ingalls refuses to administer the proper medication for the amnesia and poor vision. Carter states that Ingalls should be giving him "Cocane of Porcane."[3]

The Court has received a letter in connection with Carter's case against Ingalls. In his letter, Carter explains that it was University Hospital employees who put the blue ink and glass into his brain.[4] Carter

---

1. Unlike the astronomer Carl Sagan who can boast of billions and billions of stars, the Court can claim only some 347 pending *pro se* cases in the Southern District of Georgia. Sometimes, however, the number seems closer to billions and billions.

2. The Court does not intend for its description of *pro se* cases to be exhaustive. Who knows what lurks in the *pro se* universe? The Court cannot provide an ephemeris for the unchartered *pro se* horizons.

3. Perhaps plaintiff meant "cocaine of porcine." The recipient of such a drug would, no doubt, be "high on the hog."

4. Plaintiff may be attempting to allege a less subtle method of mind control than the type alleged by plaintiff in the case of *Jones v. Ault*, 67 F.R.D. 124 (S.D.Ga.1974), *infra*.

alleges, among other things, that at University Hospital his head was pushed into a sack with a rattlesnake and that the rattlesnake bit Carter on the face and thereby cracked Carter's skull.[5] Although Carter's letter is difficult to interpret, Carter apparently alleges that he was forced to have sexual contact with the snake as well.

In addition to the complaint against Ingalls, Carter has sent in complaints against John Weldon, warden of Coastal Correctional Institution, and Allen Baker, an inmate at Coastal. Carter first attempted to sue Weldon and Baker as joint defendants. Carter, however, neglected to send an affidavit of poverty certified by an appropriate prison official. The clerk of the court wrote Carter requesting the affidavit and a description of Baker's involvement in connection with the proposed action. In response, Carter wrote a brief epistle hurling obscene epithets at both the Court and the clerk of the court and expressing impatience with the delay in his case. Acting swiftly and under the authority of 28 U.S.C. § 1915(d), the Court filed and dismissed simultaneously Carter's action against Weldon and Baker. *Carter v. Weldon,* No. CV483–275 (S.D.Ga. July 5, 1983).

Carter first renewed his efforts against Weldon. Carter's new complaint alleges that "Weldon gave his reliable informers fake Pictures of me [Carter] haveing [sic] sex with a dog[6] and had them thinking that I were [sic] the one killing them [sic] children in Atlanta...." Not content to let sleeping dogs lie, Carter also resumed his endeavors against Baker. According to Carter's complaint, "Mr. Allen Baker were pay by some people involve in organized crime to decease" Carter. [spelling corrected]

■ Leaving Carter's animal kingdom momentarily aside, the Court first exam-ines Carter's complaint against Baker. The law is well settled that a plaintiff in a § 1983 action must allege that the defendant was acting under color of state law. Private citizens cannot be sued under § 1983 for non state-related activities unless they conspired with state officers. *See Taylor v. Gibson,* 529 F.2d 709 (5th Cir. 1976). Carter has alleged no conspiracy between Baker and state officials. The suit against Mr. Baker is ordered dismissed simultaneously with filing.

■ Having dealt with the claim against Baker, the Court turns its attention to Carter's claims of faked pictures and inadequate medical attention. "A pauper's affidavit is not a broad highway into the federal courts in the case of prisoner petitions." *Jones v. Ault,* 67 F.R.D. 124, 127 (S.D.Ga. 1974), *aff'd,* 516 F.2d 898 (5th Cir.1975).[7] Carter's preposterous claim that Superintendent Weldon faked pictures of Carter having sex with a dog is ordered dismissed simultaneously with filing because of its "patent lack of merit and want of realistic chances of ultimate success" under authority of 28 U.S.C. § 1915(d). *Id.,* 67 F.R.D. at 129 (where the Reidsville inmate alleged that prison officials were using a thought-control machine transmitting electronic or sonic waves to the inmate's brain for purposes of behavioral modification); *see also United States v. Bottoson,* 644 F.2d 1174, 1176 (5th Cir.1981), *cert. denied,* 454 U.S. 903, 102 S.Ct. 411, 70 L.Ed.2d 222 (where plaintiff inmate attempted to mandamus the judge to deliver the body of the postmistress so that plaintiff, through divine intervention, could resurrect her); *Gordon v. Secretary of State,* 460 F.Supp. 1026 (D.N.J.1978) (where plaintiff inmate alleged that the 1976 presidential elections were illegal and that had he not been in jail, he

---

**5.** *But see Numbers* 21:9, where Moses made a serpent of brass for healing purposes; *see also* the symbol for the medical profession, the aesculapius.

**6.** *Cf.* Carter's alleged encounter with a snake, *supra.*

**7.** The truly learned student of the law should know the lore of the law, as well as the letter of the law. The writings of the late Chief Judge Alexander Lawrence of the Southern District of Georgia, who wrote the *Jones v. Ault* decision, are an important source for the seeker of both the lore and the letter of the law. *See generally* A. LAWRENCE, TONGUE IN CHEEK (1979).

would have been elected President of the United States).

 The Court also orders the dismissal of *Carter v. Ingalls*, CV483–267. The Court observes that Carter does not allege that he is receiving no medical attention, only that he is not receiving the type of medication he desires. The Court, however, need not decide the case on its merits. Having considered its own records, the Court dismisses the case as frivolous or malicious under § 1915(d). *Taylor v. Gibson*, 529 F.2d at 717. Although the case was allowed to be filed, a dismissal is entirely proper at any time the Court is satisfied that an action is frivolous or malicious. *Smith v. Wells*, 512 F.Supp. 503, 507 (W.D. Okl.1980).

Thus ends, at least for now, the Carter episode, only a chapter in the saga of prisoner litigation. Everyday brings news of alleged skirmishing between inmate and institution; each bulletin begs the Court to respond. The Court's adventures in the *pro se* prisoner world will continue.